**UNITED STATES of America, Appellee,**

v.

**Hugh O. PLUNKETT, a/k/a Dennis Ivan Hunter, Appellant.**

No. 96–3140.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1997.

Decided Oct. 3, 1997

Beverly G. Dyer, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Carmen R. Kelley, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney at the time the brief was filed, John R. Fisher, Roy W. McLeese, III, and Nancy Page, Assistant U.S. Attorneys, were on the briefs.

Before: SILBERMAN, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

The Sentencing Guideline commonly known as the "safety valve" limits the applicability of statutory minimum sentences in certain cases. U.S. SENTENCING GUIDELINES MANUAL § 5C1.2 (1995) [hereinafter U.S.S.G.]. A defendant who qualifies for the safety valve also receives a two-level reduction in offense level under U.S.S.G. § 2D1.1(b)(4). To qualify, a defendant must overcome five hurdles, one of which is that the defendant must not have "possess[ed] a firearm ... in connection with the offense." *Id.* § 5C1.2(2). Application Note 3 to the safety valve defines the word "offense" to mean "the offense of conviction and all relevant conduct." *Id.* application note 3. Appellant Hugh O. Plunkett appeals his conviction on the principal ground that the district court erred as a matter of law in using this broad definition of "offense" to deny him the two-level reduction under U.S.S.G. § 2D1.1(b)(4). We affirm.

## I.

Following his indictment on six narcotics- and weapons-related counts, Plunkett pled guilty to one count of possession with intent to distribute more than 50 grams of crack, a form of cocaine base. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (1988 & Supp. V

1993). Under the terms of the plea agreement, his plea related only to the drugs found on his person when he was arrested, and not to more than 500 grams of crack and a firearm found the next day in his apartment. For sentencing purposes, however, Plunkett acknowledged as part of his plea agreement his responsibility for the additional crack and the firearm.

The district court sentenced Plunkett to 189 months imprisonment. Starting from a base offense level of 36, *see* U.S.S.G. § 2D1.1(c)(2), the court imposed a two-level increase for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), resulting in an offense level of 35. The court found that Plunkett could not qualify for the safety valve because, under Application Note 3, his firearm possession was part of the offense as "relevant conduct"; thus, the court could not apply the two-level reduction under U.S.S.G. § 2D1.1(b)(4). Because Plunkett had no prior criminal record, the sentencing range was between 168 and 210 months, and the court chose a sentence at the midpoint of that range.

## II.

On appeal, Plunkett contends that the provision in the safety valve barring eligibility as a result of firearm possession "in connection with the offense" depends only on the offense of conviction—here, a conviction based solely on the drugs found on his person at the time of his arrest—and not, as the government maintains, the offense of conviction and all relevant conduct—here, the greater drug distribution scheme, including the crack found at his apartment. Specifically, he contends that the district court erred as a matter of law in applying Application Note 3 because it is inconsistent with both the safety valve and the provision in the Guidelines entitled "Relevant Conduct," U.S.S.G. § 1B1.3. Because these arguments were not presented to the district court, our review is for plain error,[1] *see United States*

---

1. We acknowledge that both counsel discussed the scope of the "offense" under the safety valve at some length with the district court, but we fail to find any reference to the particular arguments

*v. Robinson*, 86 F.3d 1197, 1199 (D.C.Cir. 1996), and we find none.

■ First, we are unpersuaded that Application Note 3's interpretation of the safety valve is invalid because it purportedly negates any difference between the word "offense," used in three subsections of the safety valve, U.S.S.G. § 5C1.2(2)–(4), and the phrase "the offense or offenses that were part of the same course of conduct or of a common scheme or plan," used in another subsection, U.S.S.G. § 5C1.2(5). Even if Application Note 3 is viewed, in this respect, as somewhat odd, "[c]ommentary is not 'inconsistent' with a guideline simply because it adopts what [this court] might regard as one of the less likely interpretations of a guideline." *Robinson*, 86 F.3d at 1199 (citing *United States v. Smaw*, 22 F.3d 330, 333 (D.C.Cir.1994)). Application Note 3 does not adopt an interpretation of the safety valve so implausible as to be invalid. *See United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir.1997); *see also United States v. Burke*, 91 F.3d 1052, 1052–53 (8th Cir. 1996). Indeed, the definition in Application Note 3 is the same definition as appears in the commentary to the guideline entitled "Application Instructions," in the part of the Guidelines concerning general application principles. *See* U.S.S.G. § 1B1.1 application note 1(*l*).

Further, there is no inconsistency, much less the "flat inconsistency" necessary to invalidate commentary, *Stinson v. United States*, 508 U.S. 36, 43, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598 (1993), between Application Note 3 and the guideline that defines "relevant conduct."[2] Subsection (a) of that guideline, U.S.S.G. § 1B1.3, provides that, for purposes of Chapters Two and Three of the Sentencing Guidelines, the district court should consider a broad range of conduct, whereas subsection (b) provides: "Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and the information specified in the respective guidelines." U.S.S.G. § 1B1.3. Plunkett's possession of the contraband found in his apartment would qualify as relevant conduct under subsection (a), but the safety valve appears in Chapter Five and subsection (b) applies. The exclusion of Chapters Four and Five from subsection (a) does not, however, imply that courts applying the factors under these chapters under subsection (b) should be unable to consider a similarly broad range of relevant conduct. Subsection (a) is a background rule, valid "in the absence of more explicit instructions in the context of a specific guideline," while "[n]o such rule of construction is necessary with respect to Chapters Four and Five because the guidelines in those Chapters are explicit as to the specific factors to be considered." U.S.S.G. § 1B1.3 background. Application Note 3 is not precluded by subsection (b). Although subsection (a) does not apply of its own force in construing the safety valve, the natural and reasonable assumption is that the use of the phrase "relevant conduct" in Application Note 3 refers to subsection (a), which contains the only definition of "relevant conduct" in the guideline so entitled. *See id.* § 1B1.3(a).

■ Moreover, while implicit cross-referencing is disfavored in light of the norm of explicit cross-referencing in the Guidelines, *see United States v. Chatman*, 986 F.2d 1446, 1450 (D.C.Cir.1993), it is appropriate where other considerations so dictate. Plunkett maintains, citing *Chatman*, that because Application Note 3 does not mention U.S.S.G. § 1B1.3(a), the definition from that provision

advanced on appeal. Indeed, defense counsel appeared not to contest that the offense for purposes of the safety valve included the entire drug distribution scheme, not just the offense of conviction. We cannot agree with Plunkett that on appeal he has simply "provided additional detail in support of his argument" or that "his arguments at sentencing and on appeal are one and the same."

**2.** We reject the government's suggestion that, under the language of *Stinson*, challenges to guideline commentary based on inconsistency with a guideline are allowed only when the commentary is inconsistent with the particular guideline it interprets. *See Stinson*, 508 U.S. at 38, 113 S.Ct. at 1915. The rationale of the opinion, that commentary has a status akin to an agency's interpretation of its own regulations, *see id.* at 44, 113 S.Ct. at 1918, applies equally to conflicts between the commentary to one guideline and the language of another.

should not apply. *Chatman,* however, will not bear the weight he would have it carry. In that case, as here, the court was considering whether to interpret a term in one guideline in accordance with another guideline. But the similarity ends there. In *Chatman,* "[n]othing in the Guidelines themselves or in the Application Notes" suggested that one guideline should control the other, *Chatman,* 986 F.2d at 1450, and the term in question was not defined in that section "or anywhere else in the Guidelines," *id.* at 1449. Here, the disputed phrase is the very title of another guideline. "[R]elevant conduct" also cannot mean only the offense of conviction, as Plunkett contends, since there would then be no reason for Application Note 3 to mention "relevant conduct" in addition to the offense of conviction.[3] Using U.S.S.G. § 1B1.3(a), a definition from the part of the Guidelines dealing with general application principles, comports with the structural scheme of the Guidelines. Other circuits appear to agree.[4]

■ Finally, the district court did not plainly err in finding that the safety valve did not apply to Plunkett, although we need not resolve the relationship between the standard for the safety valve and the standard that governs the two-level enhancement for weapon possession under U.S.S.G. § 2D1.1(b)(1). The commentary to the enhancement provision instructs that the two-level upward "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 applica-tion note 3. Plunkett maintains that the "clearly improbable" standard has no relevance to the safety valve's reference to use or possession of a firearm "in connection with the offense" and notes that this court has distinguished between weapons possession under the enhancement guideline and the safety valve. *See In re Sealed Case (Sentencing Guidelines' "Safety Valve"),* 105 F.3d 1460, 1463 (D.C.Cir.1997). Even assuming that he is correct that the usual preponderance of the evidence standard applies,[5] *see United States v. Montague,* 40 F.3d 1251, 1254 (D.C.Cir.1994); *see also United States v. Gambino,* 106 F.3d 1105, 1110 (2d Cir. 1997); *United States v. Ramirez,* 94 F.3d 1095, 1101 (7th Cir.1996); *United States v. Ajugwo,* 82 F.3d 925, 929 (9th Cir.1996), Plunkett appears to recognize, by treating the issue in a footnote, that he could not meet his burden to show plain error in this regard.[6] *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993).

Accordingly, we affirm the judgment of conviction.

---

3. In addition, the broader definition of "offense" in Application Note 3 is consistent with congressional intent in enacting the safety valve. Congress meant the safety valve to prevent the situation in which the "least culpable offenders may receive the same sentences as their relatively more culpable counterparts." H.R. REP. No. 103–460, at 4 (1994). If other relevant conduct has bearing upon the offender's culpability, the district court appropriately considers such conduct in applying the safety valve. Given this intent it would be odd if eligibility for sentencing under the safety valve precluded consideration of relevant conduct.

4. *See Wilson,* 106 F.3d at 1143; *Burke,* 91 F.3d at 1053; *United States v. Smith,* 991 F.2d 1468, 1471–72 (9th Cir.1993). Plunkett cites no direct support for his contention.

5. We need not address Plunkett's contention that the government should bear the burden of proof to demonstrate a defendant's ineligibility for the safety valve, for prevailing on this issue would not change the disposition of his appeal.

6. In light of our disposition we do not address whether imposition of a two-level enhancement for when "a dangerous weapon ... was possessed" under U.S.S.G. § 2D1.1(b)(1) should preclude application of a two-level decrease under the safety valve and U.S.S.G. § 2D1.1(b)(4) as a matter of law. We note, however, that the government concedes, in light of *In re Sealed Case (Sentencing Guidelines' "Safety Valve"),* 105 F.3d 1460 (D.C.Cir.1997), that automatic preclusion should not apply at least when the two-level enhancement is based solely on vicarious or co-conspirator liability. *See id.* at 1462–63.